Case number 22-1260 Intellistop Inc. Petitioner v. United States Department of Transportation, et al. Mr. Obermeier for the petitioner, Mr. Ross for the respondents. Mr. Obermeier, good morning. Good morning and may it please the court. Again, my name is Steve Obermeier, representing Intellistop USA, with me is my colleague Jeremy Brogy. This court should vacate FMCSA's exemption denial for Intellistop's break-click pulse module because the agency's decision is a textbook example of arbitrary and capricious decision-making. The record before the agency, including Intellistop's application, five government-sponsored studies and two private studies, four agency grants of exemptions for similarly situated products covering tens of thousands of vehicles, and 16 of 20 comments, overwhelmingly support the conclusion that Intellistop's module would likely achieve a level of safety that is equivalent to or greater than the level that such an exemption. Indeed, the record stated that flashing rear lights generally and pulsing brake lights specifically substantially improve safety. So the agency said there was a crucial distinction between your client's product and the ones they've approved before, which is that your client's product adjusts the existing brake lights, which are required by the manufacturer. And so the agency felt that there was not sufficient data to say that that was safe in case there was a malfunction. And why isn't that well-reasoned on a substantial basis to deny the application? The problem with that, Your Honor, is it's entirely contrary to the studies on which they rely. Well, I looked at the studies. The studies talked about the brake lights, but the issue that was... I should step back. I saw that the studies talked about flashing all the lights and how that could be good for safety. But I understood the agency's problem to be that the specific module that your client advocates is tied into the existing brake lights, and there could be a safety issue, and there wasn't sufficient data that if there was a malfunction, the brake lights would still work, for example. And so I don't think that those about the module being attached to the existing brake lights. Okay, so there's a couple of different things. First of all, the studies address, as I think you said, pulsing brake lights, not supplemental. Those studies alone, you look at the pictures, they look at the picture on J... But if the safety concern is about the method in which they flash, and yours is the method is unique so far, like none of the previously approved ones, the previously approved ones were supplemental flashing lights. Yours, this is to my understanding, correct me if I'm wrong, yours are attached to the existing brake lights. And the safety issue is not about are flashing lights safe? The safety issue is yours attached to the existing brake lights, and if it malfunctions, we don't know if the brake lights are going to work, and that's very unsafe. Why isn't that sufficient? And it's not addressed by the studies. But it is two separate... First is they're saying there were no studies that address pulsing brake lights, which are what my client's product does. That is unequivocally untrue. The 2009 and 2010 studies address the brake lights themselves. And as your honor said, in fact, that doesn't even raise the possibility, despite addressing almost a functionally identical apparatus, doesn't say, oh, and by the way, these things might fail. Let's move over to the failure point, which we argue is sort of an after-the-fact aside in one sentence. It's right there in the... Well, understood, your honor, but on the safety on that point, one of the issues is that all of the previous exemptions involved cutting into the brake circuit, they all are on the same, technically address the actual brake light. They don't distinguish why the Intellistop, which also does the... Where is it in the record that the prior approved modules also tied to the same electrical system? In those exemption decisions, they talk about it being brake activated, which is like a switch, but more importantly... Well, that's different. That's different. I'm sorry, your honor. Of course, they're all brake activated. There's only one brake circuit, but regardless... But where is that? Where is that? If you look at the addendum to our reply, we have exemption requests for waste management and road, and I think both of them, definitely waste management talks about it going into the brake circuit. They don't explain why Intellistop is put at a higher level of explaining why that would be an issue or why it wouldn't have been an issue previously, why it's never been raised as So is there a study or an exemption in a situation where the flashing is flashing of existing legally required brake lights? Yes, that's the 2009, 2010 studies. And what I'd encourage is that you look at JA181, the pictures, there's multiple pictures, but you look at the picture of the apparatus in those and you look at the Intellistop video that was submitted with its application. It looks exactly the same. So I think that the concern, at least as I see it, is that the agency says that Intellistop's application would alter the performance of the required lighting device and doesn't assert that if the installation malfunctions, that the brake light would return to their best function and in fact stands to reason. They're talking about, you know, five minute or 15 minute installation. If I went in and tried to install something on my car, the likelihood is that I might end up with no lights as opposed to wonderfully flashing lights. And so I think that's just intuitively the concern that wasn't addressed in the other devices that were exempted. First of all, it should have been addressed because it's on the brake circuit. And that's one of the problems. That's a Burlington problem because it's disparate treatment without explanation. The other thing is, I think you said something that I just wanted to correct, which is Intellistop said in its application, it will revert to the normal brake lights. Right, but saying it and having evidence of why that is, it's just, to me, intuitively, it is a concern. You're having, you know, hundreds of thousands of enterprises around the country doing a retrofit. All of these involve retrofit. There are tens of thousands of vehicles out there already doing this with flashing lights. So, and this idea about a malfunction with respect to Intellistop comes out of thin air. I mean, it's not referenced anywhere. The representation is at work. There's a comment that says we had a failure. The brake lights did keep working. There's no evidence to support this. Well, I guess it seems different to me to say I'm going to add something on versus I'm going to deploy the required system in a new way. Is that a meaningless distinction in your view? I don't know whether it's meaningless or not because the previous exemption requests involved altering the current system, right, because they're on the brake circuit. There's no distinction about the brake lights being affected between ones that have been granted and Intellistop's which was not. That's a fundamental problem, but I want to go back. Let me ask you about growth because I've got it in front of me. First of all, it's not supplementary for those two seconds that the flashing and that brings up another point as far as distraction. If those things are flashing only two seconds, you could be looking over here and you wouldn't even see it. So, I don't think the driver confusion or distraction is that big a problem, but these other growth and waste management, they're up at the top, they're over here. Meanwhile, I mean, the brake lights are on, the steady burning. These are going on all over the place and that's, as I understand it, completely different from your product that you would, with the brake lights down at the bottom, they would flash for two seconds and then steady burn. Am I wrong? With one small correction, which is that the back of a tractor trailer has one of the top lights as well, sort of like you would have in a car. So, if you look at the apparatus in the testing, there's two brake lights and a light above it. It's like a CHMSL. And that's the standard required, yeah. Right. So, then a tractor trailer, your honor, with our product would be flashing that as well the same. Okay, so it's going to be flashing up here for two seconds, flashing here for two seconds, and then steady. But the growth has got, according to these, has got flashing in these five options, has flashing lights here, has another one in the middle of the brake lights here. I just think it's, unless I'm misunderstanding how your product works, these are just different from yours. First of all, they're supplementary. They're absolutely different in that respect. Well, that's... But what I'm saying, your honor, is the fact that they're supplementary doesn't address the two issues. The two technical issues are, was there ever a test that addressed pulsing brake light? The answer is yes. The agency's decision is centered on saying no. It's actually totally backward. Those two tests form the foundation of the waste management and growth decision. I thought those tests were of cars. I looked at one of them, and of course you've got a window, a big light here. Did they ever do tests of trucks? Not that I'm aware of, your honor, but those tests of cars, if you look at the waste management and growth decisions, those tests are sufficient to conclude that those exemptions would be granted, and they are less like those products than they are in Telesta. It's totally backward. They rely on a flashing brake light apparatus to grant exemptions for supplemental lights, then come back to a Telesta and say, we're going to treat you differently because you're not supplemental. It's totally backward. And again, I keep talking about the pictures, but the pictures show it plainly when you put the picture of the test apparatus. It's not backwards if they're also saying, and we don't know that if it replaces for those two seconds, the steady burning brake lights, we don't know how that affects the functionality of the steady burning brake lights. And that's, to me, a pretty important safety. But they didn't test that of the previous products, your honor, that also go into the brakes? That's because they didn't. That's because, as I understand it, the steady lights were always it's these flashing ones that are supplementary to it. But the issue that they're raising with the Telesta is that a failure would somehow affect the brakes. I think they're raising two issues. They're raising one issue, which is visually it's supplementary as opposed to replacing. So it's a visual, it's a sort of, you know, different kind of warning apparatus. And then the other issue they're raising is, yeah, and once you're getting into deploying the existing required steady burn lights in a non-steady way, if it malfunctions, is it going to revert to steady? Is it going to revert to always flashing? Is it going to revert to black? But the problem is, I say it backwards, the supplemental light decision is based on the flashing of only the brake lights. That's what that apparatus is. They cite the 2009 and 2010 studies that are about something totally different. But those are studies. Those are not exemptions. And, you know, they're part of the universe of information, but that doesn't mean that by the existence of that study being out there, that the agency is necessarily persuaded that it's enough. No dispute, but those studies were said to be sufficient to conclude that two previous exemptions of products that were less like those studies. I'm sorry. But that also had more belt and suspenders, arguably, in the agency's view. Because they had the steady burn lights and supplemental light. But the testing of the supplemental lights, that's not in those decisions. And there's not even a test that does supplemental lights like those products. The 2014 test, the only supplemental light study, the 2014 supplemental light study is a radar. It's not even brake activated. They're basing their decisions on these. The studies are more different than those exemptions than they are for Intellisoft. We get denied, they get granted. Right. But I think they're saying, OK, the studies show some stuff. But the exemptions that they granted don't go as far, either substantively or in terms of volume of trucks involved. And they're just saying it's step by step. It's just a little bit more of a leap. Conceptually, there's a lot in common, but it's a little bit more of a leap to grant exemption to your client than the prior parties. Can I please interject here? I'm looking at the actual decision here and I want to put aside the issue of do flashing lights promote safety and just look at the method with which your module does it. And it says, importantly, all other pulsing rear light exemptions that we've previously granted involve the addition of non-mandatory auxiliary lighting systems, whereas Intellistop seeks permission to alter the functionality of original equipment manufacturers lamps, which are covered by an existing FMVSS. The agency believes this is a crucial distinction from one that TSEI highlighted in its comment. And then it says the agency in consultation with NHTSA has determined that it does not currently have data to support a blanket exemption for industry to alter the performance of a required lamp covered by FMCSRs and FMVSSs. So putting aside that flashing lights are safe, the problem is with your technology that messes with the required brake lights. But they're mistakenly saying, Your Honor, that there's no evidence that the flashing brake lights have been produced. No, no. I've asked you to put that aside. It's not about flashing brake lights. It's about a technology that messes with the existing brake lights and doesn't just add new flashing brake lights. That is what they're saying. There's no data. And on that point, Your Honor, the previous exemptions all involved messing with the brake lights, however you want to say it, based on... And where in the record is that? In the addendum to our reply, which is one of the applications, which is part of the record, and the waste management and the growth application, but all four... I don't think you've briefed it this way. I'm sorry, Your Honor? I think that your briefing is focusing, as you're trying to focus on in your oral argument, about the fact that flashing lights are safe. And I don't think that... I haven't seen in your brief an argument that addresses the actual lack of data about the technology that goes to your brake lights, and that that is something that's different, that you've been treated differently because their technology also is attached to existing brake lights. I don't see an argument like that in your brief. I believe it's in the reply. I will check before I come back up here, but we absolutely address the issue because the government focuses entirely on this. But you said you're addressing in the addendum to your reply, but not in your opening brief, despite the fact that this was, as Judge Pan was reading from JA-23, this is the differentiation between this exemption and other exemptions. Well, Your Honor, that's because the decision says it's based on three things that are not the issue of the failure. We address it in the footnote in the opening because it was an aside in the opening decision. When the government and their opposition says it's really all about a malfunction, we address it in the reply because it has shifted the whole focus. The centerpiece of the decision is an absence of data on flashing brake lights, which is contrary to the record. That alone is a vacate because they're missing the size. And if we don't agree with you that this whole opinion is about flashing brake lights, we think it's about the technology, then you lose? No, Your Honor, for the reasons I've already said, which is it's still a Burlington issue, where it's disparate treatment without explanation because the previous products involve going into the circuit as well. Which you didn't raise to your reply brief. But you didn't raise that to your reply brief. No, I believe we do, Your Honor. But again, I'll check again, but I believe we do. I think you have to raise that in your opening brief, though, in order to preserve it, don't you? The issue here, Your Honor, is that, again, this was an aside in the original decision about, in the exemption decision about this issue, so I'm not focusing the malfunction part. I'm focusing the part I just read to you, which is the agency in consultation with NISA has determined that it does not currently have data to support a blanket exception for industry to alter the performance of a required lamp covered by the FMCSRs and FMVSSs. And I would say we address that head on by addressing the fact that the studies do address it. They don't address a module that changes the existing brake lights. Your studies talk about flashing brake lights. That's different. But necessarily, that apparatus has to be addressing the... But it's talking about the safety of flashing, not the safety of the technology at issue. And the important point to this question, which we also say in our reply, is that none of the previous exemptions were evaluated on a technology-specific base. If you look at the explanations... Because they were auxiliary, so the existing brake lamps, which are required to be steady burning, are still there in steady burning. But it's applying a different standard to us that we couldn't possibly have known based on the four previous exemptions. We need more information. We have a video that shows exactly how it goes in, a 3-minute 50 video shows exactly how it attaches. There is evidence in the record that a failure is not going to resolve the brake lights. None of it's addressed. And that evidence, I would add, Your Honor, that's the Tankstar comment. The Tankstar comment is addressed in the decision. It didn't mention the fact that there was a failure and that the brake lights were turned to normal. I'm not sure I have any other questions. We'll give you a couple of minutes. Thank you, Your Honor. Cason Ross for the United States. I think it's worth turning to the text of the statute in this circumstance. 49 U.S.C. 31315B requires an applicant for an exemption to an existing regulatory standard to demonstrate that the sought-after exemption will result in an greater level of safety. And even if the applicant makes that showing, the agency might, in its discretion, decide to deny the exemption, of course, subject to reasoned decision-making. FMCSA reasonably concluded here that IntelliSTOP's spare factual showing, both with respect to its particular module and with how its module would interact with driver confusion and distraction in a wide-scale implementation, reasonably denied that application. All of the other exemptions that IntelliSTOP cites here were either much more limited in scope or addressed auxiliary brake light structures, such that they wouldn't have interfered with federal motor vehicles. They supplement steady burning brake lights. They supplement, correct. None of the other exemptions were to replace existing brake light functionality. And that's why the agency needed to consult with the National Highway Safety Transportation Administration, or NHTSA, because that operating administration within DOT oversees the motor vehicle safety standard. Do all these flashing lights that you have approved, do they just flash two seconds? I'm not sure of the exact timeline, Your Honor, but they're all, I think, in relevant similar to IntelliSTOP's, with respect to the flashing. To the time? I think so. Okay. But they all are supplemental. I realize. And that's an important distinction as the agency's decision. Is it? I mean, one of the questions about whether it was promptly briefed, but Mr. Obermeier has said that, you know, any brake activated light has to integrate with well. Presumably it would have the same concern that a malfunction might not leave the statutorily required steady burning lights in working order. That's worse off than we started. So in my quick scan of the addendum to the reply brief, none of the other applications for growth industries and waste management specifically hone in on this fact. The only thing I saw was where the growth refers to it being on the brake circuit. It's just part of the, part of the, bring your attention to your equipment. Lamp works on brake circuits. But it stands to reason that if you're wanting to activate it with the brake, that there would be some involvement. I mean, I don't know, maybe not. Maybe you would have a because I think you're right that this question wasn't correctly briefed. It is worth noting that a malfunction in the case of a supplemental light versus an existing brake light is much more serious with respect to the latter because if a vehicle's sole brake lights stop working, that is significantly less safe as the agency explained here. And also note that I believe your honor was aware of the fact that the agency was encouraging an incremental approach and FMCSA, you know, actively encourages the development of new safety technology in order to make America's roads safer. And that's why in this particular case, it encouraged individual motor carriers to apply for exemptions to use a telestops device. My understanding, this is not a record, but the federal register notices have been published as seven motor carriers have applied to use a telestops device. And in telestop itself is advertised for that possibility. And the agency is reviewing each of those applications in due course. There's currently under consideration, but in this particular case for an industry-wide exemption, which could apply to hundreds of thousands of motor carriers, the agency reasonably concluded that a more incremental approach would be appropriate. And so tell me about that because their position on that is, look, if it's safe for one, it's safe for all. And, you know, and you say, well, you know, all is a lot and let's be behind the prospect that there might be exemptions for this very technology granted to individual firms that would prioritize firms with sort of sophisticated engineering capabilities as opposed to like, I have my semi out and back and I'm going to go to the, you know, auto zone and buy this and do it on the weekend. Or, I mean, is there something about the review of the companies and their capabilities that figures into this or like spell it out a little more because it's the exact same technology. Sure. So I don't know, frankly, about how the agency reviews each specific company, but I think with respect to this application, there are two reasons why FMCSA determined that denying the exemption would be proper. The first is that there was no evidence presented on how implementation of this particular device would affect driver confusion and distraction. I believe Judge Henderson seemed to hone in on this fact, which was that if all of a sudden, you know, all the semi trucks on America's roads are blinking their lights rather than steady burning, then driver, if immediately, then all drivers I think might be confused, or at least the agency explained that there wasn't sufficient information, excuse me, sufficient data to demonstrate that they wouldn't be confused. So at minimum, it was not a portraying capricious for the agency to rely on that lack of understanding with respect to wide scale implementation. The second, and this gets a little complicated and I apologize, but because this particular exemption involves a motor vehicle safety standard, which is that all motor vehicles have steady burning brake lights, that's why the agency had to consult with NHTSA on the availability of this exemption. And 49 U.S.C. 3122 includes a provision that manufacturers and repair people, excuse me, certain entities cannot, quote, make inoperable certain components of a manufacturer vehicles, sorry, components. And if the exemption was granted on an industry wide basis, the agency reasonably concluded, again, in consultation with NHTSA, that it wouldn't be able to monitor how the devices were actually installed. But if the agency grants individual exemptions to particular motor carriers, there's a greater assurance that the device will be installed correctly and by the appropriate people. And then I think it would also be- So I couldn't put this on my own clock if I had. You could. That's actually what the Motor Vehicle Safety Act requires, is that the owner of the vehicle would put it on their vehicle. Right. Okay, I got it. Exactly. But that makes a lot of sense, right? So that the vehicle repair person wouldn't be able to make inoperable a component of your car, unbeknownst to you. And so then it's limited to the owners themselves. So what about Roche? Because they also got an industry wide exemption. And when the agency gave them the exemption, they said interested parties possessing information that would demonstrate that motor carriers are not achieving the requisite statutory level of safety should immediately notify FMCSA. Why couldn't Intellistop get the same type of treatment as Roche? So for what it's worth, that sort of disclaiming language is included in all granted exemptions because the agency has a statutory duty to revoke exemptions if safety is not maintained. But was Roche industry wide? Yes. But the main distinction with Roche is that it's supplemental lighting, not the required lighting. And the agency, I think, reasonably concluded that because it was only a supplemental lighting, that the safety impacts from that kind of more broad exemption didn't implicate the same concerns as Intellistop did here. And I think this sort of dovetails with the malfunctioning concerns with the Intellistop's particular device, as well as possibilities for confusion when implementing on a wide scale basis. And when they granted Grote, had they already granted other exemptions of auxiliary flashing lights? I believe so. I forget exactly the timeline. All of the granted exemptions are in the administrative record for waste management, the National Tank Truck Carriers, Gronite Transport, and Grote Industries. And the point I was going to make was with respect to Judge Henderson's concern of supplemental lights versus your existing brake lights flashing, that I think the agency reasonably determined that if there are flashing supplemental lights, that would cause less driver confusion than the existing brake lights flashing. Because the driver might reasonably find that as long as there's a sort of a benchmark, right, of your existing brake lights steady burning, then that's what we're accustomed to as motor vehicle drivers, rather than, you know, some flashing lights. Sort of similar to how bumper stickers on your car are unlikely to distract you as opposed to putting a bumper sticker on a brake light itself. And so if you're interfering with the required safety components that NHTSA and other agencies have mandated, the agency reasonably concluded that that's a meaningful distinction and that a more cautious approach would be required here. And this court has regularly held as much. In American Petroleum Institute, the EPA, the court has urged caution when safety determinations are at issue. And so there is some level of deferential gloss to the agency's arbitrary and capricious review that would cause or would urge the court to deny the review here. So I think that there is a misstatement in the agency's decision where it says generally Intellistop relied on studies of other lighting configurations proposing to add additional pulsating lights. And that's a JA-23. But if you look at the studies, the 2009 and 2010 studies, they just have simultaneously flashing lights and not necessarily auxiliary. What do we do with that mistake? I think that's right, Your Honor. But that actual mistake in the agency's decision is no basis to vacate it. Isn't it an error if it says generally they relied on? Say again? I mean, one could just put the emphasis on generally they relied on. Oh, that may be the case. I was merely conceding the point to Judge Pan that that sort of factual inaccuracy, if anything, is harmless and is not the bottom line to the agency's decision making. And in fact, on JA-22, the bottom full paragraph of the third column, the agency expressly explains how data deficiencies in each of those studies led it to conclude that whatever conclusions could be drawn from them, which I will reiterate, are necessarily circumspect and hardly conclusive. And in all circumstances, even in the 2009 and 2010 studies, encouraged wider scale implementation and much broader so-called fleet testing before any definitive conclusions could be drawn from the studies themselves. But on JA-22, the agency explains why data deficiencies in the studies caused significant concern here, where it may not have with respect to, for example, core industries, because it didn't implicate a motor safety standard. We've had a long morning, but I just want to ask, is the school bus the only vehicle that has flashing but alternating flashing? I think so, Your Honor, but I'm not. Okay. Yeah. We've been talking about these lights for days and I thought that's what makes the school bus so distinctive. Distinctive is it's the only one that's... Well, emergency vehicles also have flashing lights. Yeah. Okay. And that is, for what it's worth, that was also part of one source of the agency's concern and part of one of the commenter's concerns is that the color of the lights could also cause driver confusion, especially if they're flashing in different places. This is, all of this goes to show that these kinds of safety determinations are best left to the agency's technical expertise and the court should diverse those determinations. All right. Any more questions? Yours, of course, denied the petition for review. Thank you. Mr. Obermeyer, why don't you take two minutes? Based on that long morning cue, I will only take two minutes. The first most important thing I would say is I think I just heard the government concede that they, that there are incorrect statements about the record in the decision. They said, and I'll read one of them here, it's generally Intellisoft relied on studies of other lighting configurations proposing to add additional full sitting light. They have misrepresented what the studies say. That alone is a vacate. That's National Fuel Gas Supply Corp. There are multiple reasons for a denial that are not dependent on each other. Then vacate is what has to be done. That alone gets to a vacate. I think that's a very important point to point out. Another thing, there was some questions about where the issues were raised on the briefs. I'm sorry, if you, I thought that the standard is we would vacate unless we are certain that the agency would have adopted even absent the flawed rationale. That's correct, but it has to do with whether the reasons are dependent or independent. Here, the reasoning is dependent because this is the foundation of the rest. For instance, Judge Pan, with respect to the module malfunction, that sentence I read is a sentence that immediately perceives the malfunction sentence. The foundation of even the malfunction sentence is based on a mistake in what the studies actually said. I think that's a vacate issue. There was some issues, some questions I want to answer for you, Judge Pan, about where things were raised in the brief. The issue about Intellisoft not providing enough information is raised in footnote four of the brief. It's a footnote because I would continue to argue, I don't know everyone here agrees, but I would continue to argue it is a footnote point in this decision. If you look at the decision, the safety analysis, the statutory analysis that's required, that section never mentions a malfunction. I think that's an important thing. The last thing is there's some talk about scope. Judge Pillard, I think you had said there were no, I think this may have been corrected, but GROTE is absolutely an industry-wide exemption. There's no evidence in the record that flashing generally is an issue. In fact, it's been the opposite. They would have to pull the exemption if it was causing issues. So there's no reason, decision to treat those. We would ask that the court vacate the exemption. Thank you. All right. Thank you.
judges: Henderson, Pillard, Pan